**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RAYMOND MARTIN WILSON,

        Petitioner,

                              CASE NO. 05-CV-70541

v.

                              PAUL D. BORMAN

MILLICENT WARREN,              UNITED STATES DISTRICT JUDGE

        Respondent.

_____/

**OPINION AND ORDER
(1) DENYING PETITIONER'S HABEAS CORPUS PETITION;
AND (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Raymond Martin Wilson ("Petitioner") has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state conviction for criminal sexual conduct. Having considered the entire record, and for the reasons that follow, the Court DENIES the habeas petition and DECLINES to issue a Certificate of Appealability.

**I.    BACKGROUND**

    **A.    State Court Proceedings**

Petitioner was charged in Crawford County, Michigan with two counts of criminal sexual conduct. The charges arose from allegations that he sexually abused his minor daughter between 1992 and 1994.

        1.    Prosecution Witnesses

The complainant testified that the abuse began when she was four or five years old and that it progressed as she got older. She stated that she had been intimate with twenty-four-year old Tom Fletcher, Jr., when she was thirteen or fourteen years old and that her mother objected

to the relationship; but her father did not. She claimed that the relationship terminated before she moved to South Carolina with her family. She disclosed Petitioner's sexual abuse of her after she moved to South Carolina as a teenager and got married. She was twenty years old when she testified at trial in 1999.

Barbara Cross was a mental health therapist. She explained why children often delay their disclosure of sexual abuse.

Petitioner's former neighbor, Thomas Fletcher, testified that, on four occasions, he observed Petitioner in bed with the complainant when she was thirteen or fourteen years old. Fletcher also testified that Petitioner had threatened to have Fletcher's oldest son, Tommy, arrested for raping Petitioner's daughter. Fletcher responded to this threat by stating that he stood behind his twenty-four-year old son and that a lot more questions would be asked if that was how Petitioner wanted to proceed.

### 2. Defense Witnesses

Shirley Van Liere testified that she encouraged the Wilson family to leave the state because the complainant was involved with a young neighbor named Tommy Fletcher. Jerry Hackney testified that, a few days before the family moved to South Carolina, he heard the complainant say to Petitioner, "I'll get even with you." This comment was made after Petitioner had asked the complainant to get him something to drink.

Petitioner's father, Frank Wilson, testified that, in 1994, Petitioner asked him if his family could stay with him in South Carolina. During the year that the family stayed with him, he never heard the complainant accuse her father of sexual misconduct.

Petitioner's sister, Susan Banister, testified that she visited Petitioner's family in South

Carolina and that the complainant expressed anger toward Petitioner for moving her away from her boyfriend. The complainant allegedly told Ms. Banister that she would get back at Petitioner for keeping her away from her boyfriend.

Petitioner testified that his daughter was having a sexual relationship with a friend's son in 1994 and that he was told to permit the young couple to do as they pleased or to pay the price. He called the police and the county prosecutor, but both of them told him they could not do anything unless his daughter signed papers implicating the young man. He sent the family out of state, but he stayed behind to deal with the harassment and threats to his property. He denied doing the horrendous things which his daughter described during her testimony. He admitted that his daughter was twelve or thirteen years old when Mr. Fletcher found him in bed with her. He explained the incident by stating that his daughter was wrapped in blankets and was cold. He maintained that his daughter was falsely accusing him of sexual abuse out of anger for interfering with her relationship with the neighbor boy whom she dated when she was fourteen years old.

        3.    Rebuttal Witness

Detective Sergeant Richard Meyer, Jr., testified on rebuttal that Petitioner contacted him regarding a relationship between his daughter and his neighbor's son, Tommy Fletcher, Jr. Sergeant Meyer informed Petitioner that they would have to interview his daughter and that she would have to divulge what was occurring. Petitioner responded that she would not talk to him.

Sergeant Meyer also testified that there was "bad blood" between Petitioner and the Fletchers and that the two neighbors were threatening and harassing each other. On cross-examination, Sergeant Meyer stated that he had talked with the complainant at her residence and

that she told him nothing had happened and that there was no relationship.

                4.        Verdict, Sentence, and Appeals

On February 12, 1999, the jury found Petitioner guilty, as charged, of two counts of criminal sexual conduct. *See* MICH. COMP. LAWS § 750.520b(1)(b) (sexual penetration with a relative who is at least thirteen years old, but less than sixteen years old). The trial court sentenced Petitioner to two concurrent terms of twenty-five (25) to forty (40) years in prison.

In an appeal of right, Petitioner argued that his trial attorney was ineffective for failing to object to hearsay statements and for not advising him of his right to request jury instructions on lesser included offenses. He also argued that the trial court erroneously admitted the complainant's testimony that she voluntarily traveled from South Carolina to Michigan at her own expense to testify against him. The Michigan Court of Appeals found no merit in these claims and affirmed Petitioner's convictions. *See People v. Wilson*, No. 219004, 2000 WL 33405375 (Mich. Ct. App. Oct. 24, 2000) (unpublished). On May 29, 2001, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Wilson*, 464 Mich. 859 (2001).

Petitioner raised his habeas claims in a motion for relief from judgment. The trial court denied his motion on the grounds that the claims lacked merit or were raised on appeal. The Michigan Court of Appeals denied leave to appeal the trial court's decision because Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Wilson*, No. 253038 (Mich. Ct. App. July 9, 2004). On December 29, 2004, the Michigan Supreme Court denied leave to appeal for the same reason. *People v. Wilson*, 471 Mich. 954 (2004).

## II. ANALYSIS

### A. The Habeas Petition, Responsive Pleading, and Standard of Review

Petitioner filed his habeas corpus petition on February 10, 2005. The grounds for relief are: (1) direct conflict of interest with the elected county prosecutor; (2) illegal detention on warrant that never existed; (3) perjury by the complaining witness; and (4) unconstitutional sentence.

Respondent urges the Court to dismiss the habeas petition on the grounds that Petitioner's claims lack merit and are not cognizable on habeas review. She also argues that Petitioner's claims are procedurally defaulted as a result of Petitioner not raising them on direct appeal. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Court finds it unnecessary to analyze the question of procedural default, because Petitioner's claims lack merit. It is more efficient to address the claims than to analyze them under the doctrine of procedural default. The Court therefore will proceed to address Petitioner's claims in light of the following standard of review.

A habeas petitioner is entitled to the writ of habeas corpus if he or she can show that the state court's adjudication of his claim on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

> The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them. Instead, it is sufficient that the result and reasoning are consistent with Supreme Court precedent. A state court moreover does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent; it may hold a view that is different from [the Sixth Circuit Court of Appeals] or another federal court. Ultimately, AEDPA's highly deferential standard requires that this court give the state-court decision "the benefit of the doubt."

*Slagle v. Bagley*, 457 F.3d 501, 513-14 (6th Cir. 2006) (internal citations and quotations omitted).

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. Finally, review is conducted in light of the law as it existed at the time of the final state court decision, unless an intervening constitutional decision announces a "watershed" rule of criminal law with implications for the fundamental fairness of the trial proceeding.

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004) (internal citations omitted).

**B.     Conflict of Interest**

Petitioner alleges that there was a direct conflict of interest between the elected county prosecutor, John B. Huss, and him. He also alleges that defense counsel was ineffective for failing to object to the conflict of interest.

1.  Legal Framework

Lawyers may not represent interests adverse to former clients. *Havens v. Indiana*, 793 F.2d 143, 145 (7th Cir. 1986). However, when an attorney prosecutes a defendant whom he represented on prior unrelated criminal charges, the defendant is not denied a fair trial if (1) the defendant's earlier convictions were based on charges unrelated to the current charge; (2) information elicited during the trial under review was not confidential information; (3) the prosecutor did not, by reason of the former confidential relationship between the defendant and himself or herself, acquire special knowledge that was used against the defendant at trial; and (4) the prosecutor's involvement in the defendant's trial was not so prejudicial that the defendant was denied due process. *Id*.

To establish that defense counsel was ineffective for failing to object to prosecutorial misconduct, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant

must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

        2.      Analysis

Mr. Huss was not involved in Petitioner's trial. Assistant prosecuting attorney David R. Sabin represented the State at trial. Furthermore, the earlier case in which Huss represented Petitioner was a civil case.

Petitioner alleges that the state district court recused Huss and that Huss subsequently dropped his lawsuit against Petitioner for money allegedly owed him for the civil case. On the first day of trial, defense counsel disclosed the fact that Mr. Huss provided legal services to Petitioner in 1995. No one objected, and no one asked to have the Crawford County Prosecutor's Office disqualified.[1] In fact, there were no questions directed to defense counsel or

---

[1] In Michigan, a prosecutor who "determines himself or herself to be disqualified by reason of conflict of interest . . . . shall file with the attorney general a petition stating the conflict . . . . and requesting the appointment of a special prosecuting attorney to perform the duties of the prosecuting attorney in any matter in which the prosecuting attorney is disqualified . . . ." MICH. COMP. LAWS § 49.160(1). Courts may "appoint special prosecutors when there is evidence that the prosecutor originally charged with pursuing the case has interests that are in conflict with a case . . . ." *People v. Pfaffle*, 246 Mich. App. 282, 291 (2001); *see People v. Doyle* (*on rehearing*), 161 Mich. App. 743, 744-45 (1987).

Even if someone had moved to disqualify the Crawford County Prosecutor's Office, it is doubtful that the party could have prevailed. "The merits of [a] disqualification motion depend on whether a substantial relationship exists between the pending suit and the matter in which the challenged attorney previously represented the client." *United States v. Bolton*, 905 F.2d 319, 321 (10th Cir. 1990) (quotations and citation omitted). Petitioner has failed to show that a substantial relationship existed between his civil case in which the elected county prosecutor represented him and his subsequent criminal case in which the county prosecutor held general supervisory authority over the trial prosecutor.

to the trial court regarding the issue.  (Tr. Feb. 11, 1999, at 82.)  As the trial court stated in its order denying Petitioner's motion for relief from judgment, "[E]veryone, including Defendant Martin, treated the disclosure of former representation as a non-issue."  (Answer in Opp'n to Pet. for Writ of Habeas Corpus, Ex. A).

Petitioner nevertheless alleges that the case in which Mr. Huss represented him was related to his criminal case and that Huss had information that "would have blown" the prosecution's case.  Petitioner claims that Huss was not produced at trial, despite being listed as a defense witness, because of the conflict of interest between the prosecutor and him.

Petitioner has not stated what Huss knew or how Huss could have used confidential information to help him.  According to Petitioner, defense counsel did not call Huss as a witness because he was unable to locate Huss.

Petitioner also has not shown that facts known only to the prosecution and acquired through the former confidential relationship were used against him at trial.  There are no specific allegations showing that the prior relationship had any impact on Petitioner's criminal case.  Therefore, the elected county prosecutor's former representation of Petitioner did not deprive Petitioner of a fair trial, and defense counsel was not ineffective for failing to object to the alleged conflict of interest.  *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) (stating that "errors of tactics or omission do not necessarily mean that counsel has functioned in a constitutionally deficient manner" and that an attorney "cannot be ineffective for a failure to raise an issue that lacks merit").

### C. Illegal Detention

Petitioner alleges that he was arrested on a misdemeanor warrant and illegally detained

for sixty (60) days while the prosecutor investigated the case and acquired a proper warrant for felony charges. Petitioner contends that there was neither a proper warrant for his arrest, nor probable cause to arrest him.

Although Petitioner has not cited the Fourth Amendment, the Amendment is implicated by Petitioner's challenge to the validity of the arrest warrant. The Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend IV.

The contention that Petitioner was seized without a proper warrant or probable cause lacks merit because the Supreme Court has held that, when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). For a "full and fair" opportunity to have existed, "the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).

In Michigan, defendants in criminal cases may raise Fourth Amendment claims in a motion to suppress evidence, which may be raised before or during trial and even on appeal. *See People v. Ferguson*, 376 Mich. 90, 93-95 (1980). Although Petitioner apparently did not file a motion to suppress evidence, "[a]ll that *Stone v. Powell* requires is an 'opportunity' for full and

fair consideration of the claim for suppression; it is up to the claimant and his counsel to decide what use, if any, is to be made of the opportunity." *Jennings v. Rees*, 800 F.2d 72, 77 (6th Cir. 1986). Petitioner was accorded a full and fair opportunity to assert his Fourth Amendment claim. Therefore, substantive review of his habeas claim is barred.

### D. Perjury

Petitioner alleges next that the prosecutor predicated his case on the complainant's false testimony and then bolstered fictional incidents to suit the needs of the prosecution. Petitioner also claims that the prosecutor incited an emotional response in the jury by repeatedly referring to a ten-year period of sexual abuse, even though Petitioner was charged only with incidents occurring during 1992 to 1994. Petitioner asserts that his attorney was ineffective for failing to object to the prosecutor's misconduct.

Prosecutors must "refrain from improper methods calculated to produce wrongful convictions." *Berger v. United States,* 295 U.S. 78, 88 (1935). Prosecutors may not incite the passions and prejudices of the jurors, *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). Prosecutors may not also deliberately deceive the jurors and the court with false evidence. *Giglio v. United States* , 405 U.S. 150, 153 (1972). However, "[t]o prevail on a false-testimony claim, [a habeas petitioner] must show (1) that the prosecution presented false testimony, (2) that the prosecution knew was false, and (3) that was material." *Abdus-Samad v. Bell*, 420 F.3d 614, 625-26 (6th Cir. 2005). The statements in question must be "indisputably false" rather than "merely misleading." *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000). "The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *United*

*States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).

Petitioner has pointed to discrepancies between the prosecutor's summary of the testimony and the complainant's actual testimony. He also points out discrepancies between the complainant's prior statements or testimony and her testimony at trial. None of the examples, however, demonstrate that the complainant perjured herself when she testified about specific acts of sexual abuse committed by Petitioner.

Even if Petitioner could show that the complainant's testimony was false and material, he has not shown that the prosecutor knew the testimony was false. Both the prosecutor and defense counsel acknowledged in their closing arguments that the case was a credibility contest between Petitioner and the complainant. Defense counsel even argued to the jurors that it was possible the complainant was telling the truth, because neither he, nor the jurors, were present during the time in question and no one could say for certain which party was being truthful.

The prosecutor's references to the ten-year period of abuse was consistent with the complainant's testimony. Moreover, the trial court charged the jurors not to conclude from allegations of improper sexual conduct for which Petitioner was not on trial that Petitioner was a bad person or likely to commit crimes. The court also cautioned the jurors not to convict Petitioner because they thought he was guilty of other bad conduct. (Tr. Feb. 12, 1999, at 129.)

The prosecutor's conduct was not improper and did not render the entire trial fundamentally unfair or a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 643 (1974); *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). Consequently, Petitioner's prosecutorial misconduct claim has no merit, and defense counsel was not ineffective for failing to object to the prosecutor's conduct. *Strickland,* 466 U.S. at 687; *Greer*, 264 F.3d at 676.

### E. The Sentence

Petitioner's fourth and final claim challenges his sentence. Petitioner alleges that the sentencing guidelines were incorrectly scored, that he was sentenced on the basis of inaccurate information, and that the trial court was biased. Petitioner also contends that the sentence was disproportionate to the sentencing guidelines, and he implies that his sentence violated the holding of *Blakely v. Washington*, 542 U.S. 296 (2004).

#### 1. Sentencing Guidelines

The Court begins its discussion by noting that "trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants'" so long as the sentence remains within statutory limits. *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)). "[F]ederal courts can not review a state's alleged failure to adhere to its own sentencing procedures." *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir. 1988). Consequently, Petitioner's claim that the state sentencing guidelines were incorrectly scored or interpreted fails to state a cognizable claim for which habeas corpus relief may be granted. *Long v. Stovall*, 450 F. Supp. 2d 746, 754 (E.D. Mich. 2006); *Whitfield v. Martin*, 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001). Federal courts may grant the writ of habeas corpus only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Furthermore, Petitioner appears to misunderstand how the sentencing guidelines function. He claims that the trial court enhanced the guidelines by adding fifteen (15) years to the guidelines and sentencing him to a term of twenty-five (25) to forty (40) years. The sentencing guidelines, however, apply only to the minimum sentence. *People v. Babcock*, 469

13

Mich. 247, 255 n.7 (2003). "The maximum sentence is either set by statute . . . or it falls within the judge's discretion" subject to the rule that "the trial court cannot impose a minimum sentence that exceeds two-thirds of the maximum sentence." *Id*. (citations omitted).

Petitioner's minimum sentence of twenty-five (25) years fell within the sentencing guidelines of ten (10) to twenty-five (25) years, and his maximum sentence of forty years was legal under state law. *See* MICH. COMP. LAWS § 750.520b(2) (setting the maximum sentence for first-degree criminal sexual conduct at life or any term of years). Thus, the trial court did not "enhance" Petitioner's minimum sentence when it imposed a minimum sentence of twenty-five (25) years and a maximum sentence of forty (40) years.

2.   Reliance on Accurate Information

Petitioner claims that he was sentenced on incorrect information that a warrant for his arrest was pending in Montana. A sentence violates due process if it is based on "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980), or on "extensively and materially false" information, which the defendant had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948).

When defense counsel raised this issue at the sentencing, the probation officer who prepared the presentence report stated that he checked with officials in the State of Montana and that a warrant for Petitioner's arrest was still pending there. Even if that information was incorrect, the trial court stated that the matter would have no bearing on the sentence. (Tr. Apr. 9, 1999, at 9-12.) The trial court did not rely on extensively and materially false information, which Petitioner had no opportunity to correct.

3.   Proportionality

14

Petitioner alleges that his sentence was disproportionate, but a plurality of the Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only extreme sentences that are "grossly disproportionate" to the crime. *Id.* at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell*, 268 F.3d 417, 453 (6th Cir. 2001).

When viewed in terms of the impact of Petitioner's conduct on his daughter, his sentence was not cruel and unusual punishment. The complainant testified that she could not have a normal relationship with a man because of what Petitioner made her do. (Tr. Feb. 11, 1999, 108.) She claimed in a letter, which was read at Petitioner's sentencing, that she would never experience a normal life as a result of what Petitioner did to her. (Tr. Apr. 9, 1999, at 28). The prosecutor stated that Petitioner might outlive his minimum sentence,[2] but his daughter would never outlive the impact of what Petitioner did to her. (*Id.* at 27). Furthermore, the maximum sentence of forty (40) years fell within the statutory maximum of life imprisonment or any number of years. "[A] sentence within the statutory maximum . . . . generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995).

    4.    Bias

Petitioner alleges that his sentence was based on the judge's emotions rather than the sentencing guidelines or the law. "The primary concern in the Eighth Amendment context has been that the sentencing decision be based on the facts and circumstances of the defendant, his background, and his crime." *Clemons v. Mississippi*, 494 U.S. 738, 748 (1990). "[O]pinions

---

[2] Petitioner was forty-eight (48) years old at the sentencing.

15

formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555 (1994).

The trial court stated at Petitioner's sentencing that only incarceration would meet the four goals of sentencing, which were punishment, protection of the victim and society, deterrence, and rehabilitation. (Tr. Apr. 9, 1999, at 39.) The court stated that the presentence report revealed a lengthy pattern of sexual molestation and abuse, which had caused extreme mental problems for the victim and which was not only inappropriate, but criminal and repulsive behavior. *Id*. The judge's impressions almost certainly were based on facts introduced in the case before it. Nothing in the record indicates that the trial court held a deep-seated antagonism toward Petitioner such that fair judgment was impossible. Therefore, Petitioner's claim of bias has no merit.

        5.    *Blakely*

Petitioner's *Blakely* claim lacks merit because he has not shown how *Blakely* applies to his case. In addition, *Blakely* was decided after Petitioner's conviction became final, and it is not retroactive. *See Lang v. United States*, 474 F.3d 348 (6th Cir. 2007) (affirming the District Court's decision that the Supreme Court's decision in *United States v. Booker,* was not retroactive and did not apply because the petitioner's resentencing became final before *Blakely*); *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir. 2005) (holding that the Supreme Court's intervening decision in *Booker* does not apply retroactively to cases already final on direct review).

16

IV. **CONCLUSION**

The state courts' rejection of Petitioner's claims did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Since reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong, the Court does not issue a Certificate of Appealability, pursuant to *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Accordingly, the Court:

(1) **DENIES** the application for a writ of habeas corpus; and

(2) **DECLINES** to issue a Certificate of Appealability.

**SO ORDERED.**

s/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: February 23, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 23, 2007.

s/Denise Goodine  
Case Manager

17